# Smith, Poley· & Co. *v.* Jernigan.

*Action on Common Count, for Money Had and Received.*

1. *Inferences of fact to be drawn by jury.*—While it is the duty of the jury to refrain from supplying missing links in the testimony by mere conjecture, it is equally their duty to draw such inferences as arise naturally and satisfactorily out of the facts and circumstances in proof.

2. *When action lies for money had and received; waiver of tort.*—An unauthorized withholding or conversion of personal property will not support an action for money had and received, to recover its value; but, if the property has been sold by the wrong-doer, and its value received in money or its equivalent, the owner may waive the tort, and maintain an action for money had and received, although there is no positive proof as to the exact amount received.

APPEAL from the Circuit Court of Escambia.

Heard before the Hon. JOHN P. HUBBARD.

This action was brought by W. S. Jernigan, against Smith, Poley & Co., who were sued as a partnership, the names of the individual partners being nowhere stated; and was commenced in a justice's court, on the 5th June, 1886. The complaint filed in the justice's court was in these words: "The plaintiff claims of the defendants $87.19, due from them by account on or about 28th May, 1886; which sum is due and unpaid, although demanded." The record does not show that any other complaint was filed in the Circuit Court, to which the cause was removed by appeal. There was a judgment on verdict for the plaintiff, for $92.92. On the trial, as appears from the bill of exceptions, the proof showed that the defendants owned a saw-mill on Murder Creek in said county, and were engaged in the business of sawing, selling, and shipping lumber; that the plaintiff bought a saw-mill, and a quantity of saw-logs, from the Western Lumber Company, a few miles above on the creek, and "one B. F. Poley also bought 250 saw-logs from said company, about the same time;" that all these logs were marked or branded alike, and were lying at different places in the creek, plaintiff's being above those bought by Poley; that "said B. F. Poley sold his logs to the defendants; that afterwards, when rains came, plaintiff turned his logs out of his boom at the upper mill, and they were driven down the creek,

[Smith, Poley & Co. v. Jernigan.]

plaintiff's and defendants' logs, and all other logs and timber in that portion of the creek, mixing up together on the drive; that some of these mixed logs were caught in the defendants' boom, and numbers of them were carried on down the creek and river." The plaintiff testified, "that he afterwards found many of his logs in the defendants' boom;" and one Hundley, "who was log-scaler at the defendants' mill, and kept an account of all logs sawed at their mills, with brands and dimensions," testified as a witness for plaintiff, "that he had scaled (that is, measured before sawing, to ascertain how much they would make when sawn) 118 logs branded as above described; while B. F. Poley testified, "that defendants received only about one half of the logs which he sold them, all the rest having gone down the creek with plaintiff's drive." The bill of exceptions does not state the dates of any of these transactions, but it is added: "There was no testimony, except as above set out, or attempt on the part of plaintiff to show, that there was ever any acknowledgment by defendants that they had taken any of plaintiff's logs, or any agreement or promise by them to pay for the logs claimed to have been taken by them; and there was no testimony, except as above set out, as to what defendants did with said 118 logs."

"The court charged the jury, among other things, that if they found that defendants had converted plaintiff's logs, they would not be liable in this action, unless they had sold the logs; but that it was not necessary for the plaintiff to show by positive proof that there was a sale: that the jury might infer there was a sale from all the circumstances in evidence, if the time expired and other circumstances justified such inference. To this part of the charge the defendants excepted," and also to the following charge, which was given on request of the plaintiff: "If the jury are reasonably satisfied, by lapse of time and other facts in evidence, that the lumber sawed from these logs has been sold by defendants, and that plaintiff has made out his case in other respects, they must find for the plaintiff."

The defendants requested the following charges in writing, and duly excepted to the refusal of each:

(1.) "The jury must look to all the evidence, to see whether the defendants sold the logs in question. The mere sawing of the logs is not enough. If there is no evidence going to show whether defendants ever sold the logs, or lumber into which they may have been sawed, or that any

17

[Smith, Poley & Co. v. Jernigan.]

payment was received by them in money, or something in the place of money; then the jury are not justified in drawing any inference on this point."

(2.) "In this case, the law casts on the plaintiff the burden of proving that defendants received some payment for logs, the value of which is sued for; and if there is no evidence showing this fact, plaintiff has failed to make out his case, and is not entitled to recover."

(3.) "The fact that B. F. Poley, who is not a party to this suit, may have received payment for the logs, does not affect the case. Before plaintiff can recover, he must show that the defendants, Smith, Poley & Co., sold and were paid for the logs, or for the product of the logs."

(4.) "In this case, the burden is on the plaintiff to show how much defendants received for the logs, if any of plaintiff's logs were taken and disposed of by them; and if the evidence fails to show that fact, the plaintiff can not recover."

(5.) "Before plaintiff is entitled to recover in this action, he must show to the satisfaction of the jury that the defendants took and converted his logs, and disposed of them, and received payment therefor; and if the evidence on these facts, or any one of them, is equally balanced, then plaintiff is not entitled to recover."

(6.) "Although the jury may believe that the defendants did take plaintiff's logs, or buy them from B. F. Poley, and saw them into lumber; yet, before plaintiff can recover in this form of action, he must show that they sold the product, and received payment therefor; and if the evidence shows this to the satisfaction of the jury, then plaintiff is entitled to recover only so much as the proof shows they sold such product for."

The charges given, and the refusal of the several charges asked, are now assigned as error.

JAS. M. DAVISON, for appellants, cited *Fuller v. Duren*, 36 Ala. 73; *Crow v. Boyd*, 17 Ala. 57; *Strother v. Butler*, 17 Ala. 733; *Pike v. Bright*, 29 Ala. 332; 54 Amer. Dec. 88.

JOHN GAMBLE, *contra.*

STONE, C. J.—The present suit counts in assumpsit. It is claimed for plaintiff, appellee here, that Smith, Poley & Co. converted to their use certain saw-logs, the property of plaintiff, sawed them into lumber, and sold and disposed of

the same. The present action, waiving the tort, sues for the proceeds, as so much money had and received. To maintain such action, there must have been a sale, and the reception of money, or some article or thing as the price or value of the plaintiff's property. It is not enough, to uphold the present form of action, that defendants have received plaintiff's property, and withhold it tortiously.—1 Brickell's Dig. 150, § 229.

The bill of exceptions purports to set out all the testimony which tended to show that defendants received or converted any of the plaintiff's saw-logs; and there was no positive testimony of any sale of lumber produced from them. If there was such sale, it had to be inferred from the known, usual course, in such line of business, and from the lapse of time.

The record speaks of Smith, Poley & Co., and also of B. F. Poley. It is not shown whether or not the latter was a member of the firm of Smith, Poley & Co.

Sometimes very important inferences are drawn, when there is no direct proof of the fact. The distinction is between mere conjectures, and inferences which the facts and circumstances naturally suggest. It is no more the duty of the jury to refrain from supplying missing links in the testimony by mere conjecture, than to draw such inferences as arise naturally and satisfactorily out of the facts and circumstances in proof. To reach the truth, the naked truth, should be the aim, the pole-star to guide juries in their deliberations.

We find no error in the charge given by the court of its own motion, nor in the charge given at the request of the plaintiff. The defendants requested six several charges, which were in writing. They were all refused, and a separate exception reserved to each refusal. We have numbered them in the order in which they were asked.

Charges one and two were misleading, in this, that their tendency would be, if given, to create the impression, that some positive testimony was required that the defendants had received for the lumber either money, or something in the place of it. The charges given stated the rule correctly.

Charge three would have been correct, if it had not stated as a fact that B. F. Foley was not a party to this suit. In the state this record is in, we can not know that such is the fact. It should have been stated hypothetically.

Charges five and six should have been given, while charge

four would probably have misled the jury. The exact amount received would frequently be difficult of proof, and is not a condition of the plaintiff's right of recovery. The jury, in such case, should give as damages such sum as they are reasonably satisfied the defendants received, and no more.

Reversed and remanded.

## *Action on Common Counts.*